Good morning, Your Honors. Lynn Deppenbach here from the Federal Public Defender's Office with Steve Sadie on behalf of Mr. Moraz. This case presents a simple question of administrative law. How does the OPA amend a rule to disqualify an otherwise eligible prisoner? The Bureau of Prisons set up a two-step process to determine which prisoners would be eligible to participate in the residential drug treatment program. The first step requires a diagnosis, and the BOP chose to incorporate and rely on the DSM-IV factors. The second step is a verification requirement that there be use of the same substance in the past. The BOP written rules do not have any temporal limitation on that, and this requirement is something that the DSM-IV does, does it not? It does. It does. Let me see if I can take you right to the heart. I don't think this is an easy case at all. I think the problem is trying to determine whether this is an interpretive rule or a regulation. And that's sort of the nub for the panel to have to decide. But I'm looking at excerpt of Record 64, which I think is the program statement on residential drug abuse treatment programs, and specifically I believe it's page 4 of 13, 5.4.1, and then I guess it's A1 in parentheses, where it says that the program, and then it says you look to the central file to see if you can document it, or you review pertinent documents, and consider whether or not they corroborate the inmate's statements. And then it says the inmate must meet the diagnostic criteria for substance abuse or dependence indicated in the Diagnostic and Statistical Manual, version 4. So as I see it, what the BOP is saying is we look to the DSM-4 in order to verify here. And then I go to the DSM-4, and I see at, I guess it's page 6, this is addendum 1 in the record. Page 6, under the category of course specifiers, throughout talks about a 12-month period in order to determine whether the inmate is suffering from a diagnosable current condition of drug abuse or is in remission. So my question to you, and it's a long-winded one, is what's wrong, what's unreasonable about the Bureau of Prisons looking to that 12-month period in the DSM-4 and saying that's how we determine whether or not you've got a verifiable drug abuse problem? There's absolutely nothing wrong with them using the DSM-4 remission specifiers. And in fact, they did in this case. They did twice. They diagnosed him as being cocaine-dependent. And if you look at the sealed excerpt of record, page 11, you'll notice that that is the diagnosis sheet, and in there it asks how often he used the drugs within the 12 months before he was on the street. So they did apply those DSM-4 remission specifiers and concluded that he had a substance abuse problem. Right. Now as I understand your attack, your attack is on the Bureau of Prisons picking 12 months as sort of arbitrary and capriciously, and my question really is, what's arbitrary and capricious about going to the DSM-4 and seeing what the criteria are for determining whether or not the inmate has a diagnosable problem for which he needs treatment? The way you present that question, there's nothing wrong with it. But the BOP didn't do that. They did two things in just setting up the eligibility criteria. One is the diagnosis, which there's no dispute Mr. Moraes was diagnosed with a substance abuse disorder. The second step, and if you look at the program statement, it says additionally. There's this verification requirement. And the National Drug Abuse Coordinator, Beth Lyman, in her declaration, said that the BOP is the only entity in the galaxy to require this verification requirement. And that's the only thing that we are questioning here, is that having determined that prior use of the same substance satisfied that verification requirement, whether or not they could add to that verification. So this gets right down to what just a different way of approaching Judge Tallman's question, which is the DSM-4 says, well, we look to a 12-month period to make that determination that you just related to us. Now, in the declaration by Beth Lyman, she is more specific about how that 12-month requirement is utilized. And she says there must be documentation in the inmate's central file or other formal documents that the inmate had a substance abuse problem in the year prior to entering. Now, here, which they did, they looked at the determination that he was a drug abuser. They then looked at his PSR, the pre-sentence report. And in the pre-sentence report, there's very little there about drug abuse. And they say, well, there's no 12 months. He doesn't meet this. There's nothing to show in the past 12 months prior to entering prison that he had this drug problem. And they disqualify him. Okay. But the question here today is not whether or not it's reasonable for them to require the use with the verification of use within the 12 months preceding. It could be arrest in some cases. It could be incarceration. It could be offense. We don't know because it's an unwritten rule. And it's varied all over the place. That's where you're losing me. It's not unwritten. It's written in the DSM-IV. It's written in the program statement incorporates the DSM-IV. And when the Bureau of Prisons tries to verify the inmate's self-reported claim, which is going to get him a year off his prison sentence if he successfully completes the program, that he's entitled to treatment because he has a drug abuse problem, they look to the only sources that they have available, the central file, the pre-sentence report, in order to make the determination as to whether or not he reported drug abuse within 12 months of incarceration. You're saying that that has to be, I guess, subject to notice and comment rulemaking before the Bureau of Prisons can make the decision that under the program statement and the DSM-IV, he has a diagnosable disease for which he is in need of residential drug treatment. No. I think the issue is that the BOP conflated the diagnosis criteria with the verification criteria. And the rules say first you diagnose and then second you do this verification. And by saying that the verification is linked to the diagnosis in the DSM-IV criteria, you're conflating them. You'd have a much stronger argument if the Bureau of Prisons had picked a different time period, if they'd said it has to be within 18 months or it has to be within 2 months. Instead, they picked the same time period that the experts do when they write the DSM. But we don't know which 12-month period we're talking about under this rule. Wouldn't you? Of course we know. That was my whole point, was the DSM-IV, I think your argument is that the DSM-IV uses that 12-month period in a different way. Is that right? It does use it a different way. A different way. Okay. The unstated, and I think there is something here that is unstated, that if you go to the program statement, it is not specific. The unstated part, at least when I read all of this, was that, as I read, documents that the inmate had a substance abuse problem in the year prior to entering. That statement is different than the way in which the Bureau of Prisons utilizes the DSM-IV 12-month notion in how do you look at cessation of drug dependence. You mean in the diagnosis? In the diagnosis. Exactly. Right. So it's different. It's different and it's additional and it's the only ones in the galaxy that use it. You still get back to the fundamental question that Judge Tallman asked, which is, is this an interpretive or substantive rule? And it looks like it's interpretive to me. And it could be interpretive, but under 706 of the APA, it doesn't matter whether or not it's an interpretive. They don't give an explanation. Because they don't give an explanation. You can't follow their reasoning. Exactly. Why they adopted this one year prior to entering. Right. And we can make up all sorts of reasons to provide that explanation. It's logical to incorporate the DSM-IV or whatever, but that's not part of the administrative record. So we're left to guess. Is your position that only if he could show that he was actively using drugs in prison within 12 months of his claim of entry into the program, that that would be consistent? Well, actually, the rules say that if your only proof of use is a dirty UA while you're in prison, then you have to do the non-residential and be observed and all of that. Before you sit down, let me ask you a practical question. Your client, as I understand, is going to be released in November? Correct. All right. If we were to grant relief, how could he complete a 12-month residential program if he's going to be out? He couldn't. He's been denied that opportunity, and it's unfortunate because he really wanted to do that drug treatment program, and he took the non-residential instead. Could he be enrolled as part of his supervised release in a residential drug treatment program for a year? And if so, who's going to pay for that? Well, he couldn't because he'd have to go back into the institution, and he's on supervised release, and the BOP no longer has custody. So he's on supervised release now? No, he's at the halfway house. At a halfway house. Okay. The remedy available for him is to go back to a sentencing court and request a modification of his term of supervision under 3583E. But he's not getting any help for it? He's not getting any help, and that's unfortunate. If he really wants treatment, he's not going to get any treatment. He's not. What he really wants is to get a drug. No, he's been denied that opportunity. Right. Right. But it can atone for some of the denial of the early release that he was he didn't get. Well, I guess I'm more concerned about getting him some help if that's what he really wants. But it sounds like what he really wants is a year off of his sentence. Well, I don't know. I mean, he really made an effort to take whatever program there. Well, I mean, we both know what he wants. It's a question of whether or not he wants to go through the drug treatment program. Why don't you save the balance of your time for... Okay. Thank you. Oh, you're right. Overtime. But I'll give you some. I'll give you a minute. It's a nice day today, so I'll be nice. May it please the Court. Suzanne Bredis for the Bureau of Prisons. Where we need to start in this analysis is actually not with the program statement. What the Petitioner is challenging is this verification requirement. And the verification requirement is explicitly within the BOP's regulations. 28 CFR 550.56 states explicitly that in order to be eligible for the residential drug abuse program, an inmate has to have a verifiable documented substance abuse problem. That verifiable documented requirement is something that the BOP promulgated in their regulation. They put that regulation through notice and comment and followed all of the procedural requirements the Petitioner is asking that the BOP follow. What the policy does, the informal BOP policy, is it interprets that term, substance abuse problem, as it's used in the regulation and as Congress used it in the statute. That term was left undefined. And so the BOP used the DSM-IV in order to define the undefined term, substance abuse problem. So what we have when we look back to the regulation itself is a regulation requirement that states that an inmate has to provide documentation of a substance abuse problem as substance abuse problem is defined by the DSM-IV. Explicitly, they have to have an active substance abuse problem that's not in remission. So they have to have shown symptoms of drug use, of drug dependence or drug abuse in the 12 months prior to incarceration. Where does it say that in the DSM-IV? The 12 months prior to incarceration? That's the definition of dependence or the definition of remission. Where does it say in the DSM-IV, 12 months before incarceration? It doesn't say that. Your Honor, if I could turn your attention to the remission specifiers, which are on the Addendum 1, page 7. The DSM-IV defines full remission as not showing any symptoms of drug use. Where does it say in the DSM-IV, 12 months before admission into the prison? And that's at Addendum 1, page 8 of the red brief. So this is the DSM-IV copy that we provided. So it's page 197 of the DSM-IV. Right. Okay. But Addendum 1, page 8. Yes. Give me the exact page. Where is it? Sure. So on page 8 of Addendum 1. Hold on. Page 8 of Addendum 1. Okay. The DSM-IV states, you can see, in a controlled environment. It's above that subsection criteria for substance dependence. Hold on. Hold on. Hold on. In a controlled environment. So the DSM-IV states that the remission specifiers don't apply if a person is in a controlled environment, whether that's in prison, therapeutic communities, locked hospitals, substance-free jails, or closely supervised. Okay. So where does it say 12 months, though, right here in the controlled environment? That's on the page before, which states it defines sustained full remission. Where? It defines sustained full remission on page 7 of your addendum. So this specifier? That's correct. It says the specifier. If full criteria for dependence have not been met for a period of 12 months or longer, however, one or more criteria for dependence abuse have been met. So for full? So then you go over here to in controlled environment, and you know that that means 12 months before they enter the prison. That's right. That's correct. Well, I tell you this. I read this, and I couldn't figure that out. Well, Your Honor, that's explicitly what's in the DSM-IV. It's how the BOP has understood it, and that's the accepted. So that's why they needed to interpret it? Is that what you're saying? No, Your Honor. What they needed to interpret was simply they needed to define the term substance abuse problem. Right. So they incorporated the DSM-IV in its entirety on substance abuse. To interpret it. To interpret that term. Okay. That's right. And so we look to the DSM-IV as the direction for how we're going to define substance abuse problem. And that 12 months prior to incarceration comes directly out of the DSM-IV. I gather your position is that the Crickin v. Thomas case requirement is satisfied by the combination of what you just recited to the Court and the other manual reference that you made. It is with one qualifier, if I may. To the extent that the Petitioner is attempting to state that Crickin applied 706 directly to program statements, that's not correct. If I can turn your attention to Note 11 in Crickin, which is where the Court talks about the program statement, not the regulation, but the program statement, you'll see that the Court applied ‑‑ sorry, the Court applied Skidmore analysis. And so under Skidmore, we have kind of that similar requirement that a court can look at the rationale that an agency has put into place. But the Court, in applying that substantive issue, is doing it under Skidmore. It's not applying 706 to program statements. Okay. So that's where the extra deference comes in then, right? That's correct. That's right. So from the government's perspective, the LP's perspective, although ingenious, this argument fails. It's a matter of law. I think that's right. Yes. What we have here is an instance in which the agency did exactly what the APA intended for it to do. To the extent it created a new eligibility requirement, it did that notice and comment rulemaking. It used the program statement to do nothing more than to interpret the terms that were used in the statute and in the regulation. And because the program statement is interpreting a statutory rule, we would apply Skidmore deference to that policy statement. Unless the Court has any other questions. Why don't they just include the, you know, this statement in Ms. ‑‑ what's her name? Ms. Weinman? Yes. Why isn't that just included in the program policy statement? Which statement is Your Honor referring to? There must be documentation in the inmate central file or other formal documents that the inmate had a substance abuse problem in the year prior to entering. So it's clear. I mean ‑‑ Your Honor, the program statement does state that you have to meet the ‑‑ Yes, but you have to go through. In order to understand all ‑‑ in order to realize that, to understand that, to know that that's a ‑‑ that's how they're interpreting it, you have to go to the DSM-IV. Right? Right. Now, what prisoner has the DSM-IV handily available? Your Honor, I ‑‑ the DSM-IV could be available to the prisoners if they ask. Was it available here to Mr. Meraz? I don't know the answer to that. And to the extent that the BOP could have drafted their program statement better, I'm not going to argue with the Court on that. However, the substance that is required is there and is due the deference accorded to it under Skidmore. We would never suggest that government regulations are okay. I would never suggest that the agency could make a mistake, Your Honor. Unless the Court does have further questions. Thank you. I just wanted to comment on your reference to Crickin's footnote 11. Although it does speak to the Skidmore deference and how much respect should be owed to the informal rules, I think that it could be read far more broadly than that to include any kind of agency action. And that's very consistent with a long line of cases saying that agency action, not just substantive rules or interpretive rules or whatever, but agency action as a whole are subject to 706 review. I thought you had a pretty good argument until counsel just explained. I mean, this is, you know, people always ask me, does oral argument make a difference? And sometimes it can. And I'd like you to respond specifically to her analysis in response to my questions. Okay. About the DSM-IV and how she worked me through it. What's wrong with that? It's only wrong to a certain extent. I think she's absolutely correct that the BOP went through the proper APA processes in the regulation. And we don't really even have a problem with the program statement. It's this unwritten, this thing that Beth Warren said. But her point to me was that it's really not unwritten. It's all there. You just have to read it. And I will admit, I read it, but I didn't understand it the way she explained it. It's like reading the tax code for heaven's sake. Right. So now I'm asking you, what's wrong with her explanation to me? And why didn't she, you know, why isn't her explanation correct? It's not correct because the rules should be sort of apparent on their face. No, no, no. I understand that part of the argument. I'm my – she's – I asked her specifically, where does it say in the program statement that it's 12 months prior to entering the prison, okay? She said, well, it's not in the rule. We all know that. It's not in the policy statement. We know that. It's literally there. She said, you go to the DSM-IV and we got it. Walked me through the DSM-IV, and, you know, it's not clear, but reasonably looking at it, it sure looks like when you're in a controlled environment, it's 12 months before. And if that were the case, why did they diagnose Mr. Morales as being substance dependent? Because they were relying on those factors. I know, but this gets to the document – how they document his condition. And there's no question that they documented what he said to them during the interview, but then the question is, going back to the other documentation in the central file, is it corroborated? The answer here is no. It's not very strong, but it does say that he used the same substance. And if that's enough – could I have a moment, please? One – 30 seconds. My colleague says and reminds me that the DSM-IV also provides that sustained full remission doesn't mean that you're not diagnosed. And so if they're going to impose these remission qualifiers, they need to do it either faithfully or, as they've done, unfaithfully. But you're – that gets to the specifics of this case. But the idea that there was no notice and comment on a key component of this, you now concede in light of what she said that that is not accurate. As to the 12-month rule, there has been no notice or comment. There was to the regulation, but we submit that the 12-month rule is not a clarification and is not an interpretation of the validly promulgated regulation. And you said that notwithstanding what counsel worked through with Judge Paias when she went through the regulation, because that was all notice and comment material. Admittedly, you had to look at the predicate to understand how you got there, but that was all notice and comment. Actually, it wasn't. What was notice and comment was that they were going to require a verified substance abuse disorder. The program statement is the first one that comes up and says that we're going to rely on the DSM-IV. That was not subject to notice and comment. Thank you very much. Thank you very much. I appreciate your arguments. They're all very helpful. But I need a break. So we're going to take a 10-minute break.
judges: Paez, Tallman, Smith M.